# GOOLMAN *v.* HOBART.

---

PATENTS; INTERFERENCE; BURDEN OF PROOF; PRIORITY OF INVENTION.

1. The burden is on the junior party to an interference, to remove the presumption of prior invention that always attaches in favor of the senior party; and this presumption cannot be overcome by the uncorroborated evidence of the junior party.

2. A decision of the Commissioner of Patents in favor of the senior party to an interference, involving the invention of an improvement in automatic pianos, was *affirmed*, upon a review of the evidence which showed, among other things, that the testimony of the junior party that he had made a sketch of the invention prior to a constructive reduction to practice by the senior party was uncorroborated; that the device made and exhibited by the junior party was only an illustrative model, and not an actual reduction to practice, and there was doubt whether it contained the mechanism called for by the issue; that the date of the construction of another device exhibited by him was not proven with sufficient clearness; that the sale by him of a piano, claimed to embody the elements of the issue, was attempted to be established by the entries in a book, without calling upon the person keeping the book to identify the entries, nor was the construction of the piano sufficiently shown; that the construction of another piano, also claimed to embody the invention, and which it was attempted to show had been bought by the senior party's assignee before the date of conception by the senior party, was not sufficiently established; and

that a contention by the junior party that his application was made from a full-sized operative machine shipped to his attorneys, before the filing date of his adversary, was not supported by evidence that the attorneys received the machine, or that the applicant's drawings were made from it.

No. 466.  Patent Appeals.  Submitted March 13, 1908.  Decided May 5, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          *Affirmed.*

The facts are stated in the opinion.

*Mr. Marcellus Bailey* and *Mr. Parker W. Page* for the appellant.

*Mr. Frank V. Briesen* and *Mr. Arthur V. Briesen* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding, awarding priority of invention to appellee, Adam Hobart. This decision affirmed the finding of the board of Examiners-in-Chief reversing that of the Examiner of Interferences.

The application of appellee, the senior party, was filed on May 21, 1904. Appellant, Fred Root Goolman, the junior party, on June 20, 1904, filed his first application, which contained claims to several distinct inventions. Division was called for by the Primary Examiner, and appellant filed a divisional application, the one here in controversy, on January 10, 1906. No interference was declared between appellant's prior application and the application of appellee, which latter eventuated into a patent on July 19, 1904.

The invention in issue is an improvement in auto-pneumatic pianos, which consists in mounting the tune-sheet rollers in a detachable drawer or box, instead of upon the frame or casing

of the piano, as is ordinarily done. This drawer, when attached to the piano, brings the tune sheet into proper relation with the duct bridge, and the tune-sheet driving roller into gear with the motor mechanism on the piano. By this means, one tune sheet may be substituted for another much more conveniently and quickly than if the rollers were mounted in bearings forming a permanent part of the piano mechanism. The issue is set out in two counts, which read as follows:

"1. An autopneumatic piano case having a duct bridge, combined with a box having a tune sheet and tune-sheet rollers, and means for detachably securing said box to said case.

"2. An autopneumatic piano case having a duct bridge and a driving shaft, combined with a box having a tune sheet and a feed roller, means for detachably securing the box to said case, and means for intergearing the feed roller with the driving shaft."

Appellee is an employee of the firm of Roth & Englehardt, of St. Johnsville, New York, the manufacturers of the "Peerless Pianos," and has assigned his patent to that firm. He relies upon his filing date, although he has offered some evidence which shows that his assignee was in possession of an instrument containing the elements of the issue prior to March 12, 1904.

Appellant was a junior partner in the firm of Roth & Englehardt until about December 20, 1900, when the partnership was dissolved, and he retired from the firm. He then entered into correspondence with the Harris Brothers, of Binghamton, New York, who were interested in the sale of musical instruments, and particularly the "Peerless Piano." The Harris Brothers called upon appellant at his home in Brooklyn, New York, in the early part of the year 1901, and, as the result of this conference and other negotiations, a partnership was formed on March 28, 1901, for the manufacture of automatic musical instruments, which afterwards became known as the Automatic Musical Company.

Appellant claims to have conceived and disclosed the invention in issue as early as the latter part of 1900 or the first of

1901, and testifies that, in the early part of 1901, he made a small pasteboard model of the device, which he showed to the Harris Brothers, when they visited him. There is some conflict as to just what was shown, appellant testifying, on cross-examination, that he does not recollect showing them the frame and rolls, while Mr. B. H. Harris, testifies that he was shown a model of a detachable drawer that could be put and made to work on an automatic self-playing piano with an endless roll. Owing to the fact that the company desired him to direct his attention to the development of an automatic xylophone, which he had devised before joining the company, nothing further was done toward perfecting the improvement in controversy, until it became apparent that the xylophone would not prove a success.

It appears from the record that experiments on the invention in issue were begun in January, 1903, and a sketch made by appellant, and dated January 9, 1903, was introduced in evidence (Goolman exhibit No. 9, Goolman sketch), which shows the subject-matter of the counts. Appellant testified that the sketch was made on the day of its date. The witness Daniels testified that sketches and draftings embodying the same elements were shown to him during the winter and spring of 1903, but he could not swear that he ever saw that particular sketch. Therefore, appellant's testimony stands uncorroborated as to the date of the drawing.

There is evidence to the effect that a device embodying the elements of the issue was made and successfully operated prior to August 30, 1903. The first one of these devices is in evidence and is known as "Goolman exhibit No. 5, model." The Commissioner says in regard to the exhibit: "This exhibit when produced was in five distinct parts. Some of the elements called for by the issue are not present. The tune-sheet rollers are missing, and also two of the four bearings for such rollers. Of the means for securing the attachment to the piano, which is one of the principal elements of the issue, only that part which is alleged to have been secured to the piano case is produced, the co-operating parts on the roller frame being absent; and the frame is so broken and mutilated that it bears no

evidence of ever having been provided with means to engage its co-operating part on the piano case. It is not claimed that the box for receiving the tune sheet was ever attached to the roller frame, as are these parts in the commercial machines. While this might be immaterial were it the only feature which the exhibit lacked to make it a reduction to practice, it is referred to as another circumstance indicating the incompleteness of the device. Notwithstanding some testimony that the device was complete and operative, I agree with the Examiners-in-Chief that this device was nothing but an illustrative model, and not an actual reduction to practice." The weight of all this evidence is seriously affected by the statement of the witness Harris that "the idea was to have the instrument take up as little room as possible, and to make the construction of that detachable drawer with as little mechanism as possible; the main idea was to do away with mechanism on the drawer." It will be remembered that this mechanism is one of the elements of the issue.

It is claimed on behalf of appellant that the device known as "Goolman exhibit No. 4" was made in the fall of 1903, and constitutes a reduction to practice. This time is set by appellant's testimony, and the witness Daniels, an employee of the Automatic Musical Company, attempts to corroborate it. This witness testified to the effect that, although he could not swear to having had anything to do with making exhibit No. 4, its generally crude appearance and finish identifies it to his mind as one of the very first devices that was made in 1903. He also testified that he started out on the road permanently as a salesman on August 30, 1903, and positively knew that he had helped make every individual part of the Reliable Automatic Piano, and that it was a perfect instrument some weeks before he left the factory. But witness fails to specifically identify the particular exhibit here under consideration. Gantley, another employee of the Automatic Musical Company, testified that he saw and heard appellant operate an automatic piano on July 29, 1903; but this testimony does not prove that the instrument which Gantley saw or heard embodied the elements of the issue. A further doubt is cast upon the date of this exhibit by

the fact that the device shows a wire spider between two rollers, and the appellant himself testified that this wire spider was not designed until some time in 1904. The three tribunals of the Patent Office held that the evidence as to the date of this exhibit was not sufficiently clear and explicit, and with this conclusion we must agree.

Appellant has offered evidence to the effect that a piano embodying the elements of the issue was sold to one Rae Walters on November 20, 1903; and has attempted to establish this date by producing a book for the purpose of showing when and to whom the sale was made; but the person who kept this book was not called to identify it. It therefore adds nothing by way of corroboration to the oral testimony of appellant on this point. There is also in evidence a conveyance in the form of a lease by the Automatic Musical Company to Rae Walters for an endless-roll automatic piano, which is dated November 20, 1903. Appellant testified that this piano did not differ in any way from the device shown in the application drawings, except that, in place of a sliding wedge, which was in the first few pianos, a thumb screw had been substituted, which makes the adjustment more perfect. The only corroborating evidence is the following statement by the witness Harris, that "these drawings (photographs of the application drawings) are practically the same thing" as the piano under consideration; but this testimony is very materially weakened when, under cross-examination, he admits that he does not understand these drawings because he does not understand mechanical drafting. Appellant also relies upon the testimony of witnesses Daniels and Gantley, but these witnesses simply state, in a general way, that the drawers manufactured prior to the date of the sale of the Walters piano did not differ essentially from those manufactured at present. The fact of similarity between the construction of the Walters piano and that shown by the application drawings is rendered still more doubtful by reason of a letter written to Rae Walters by the Automatic Musical Company, and dated March 25, 1904, which states that, if she will return the drawer to her piano, they will add "a new and wonderful improvement." It is reasonable

to assume that any "new and wonderful improvement" would be included in the application for patent.

An attempt has been made to show by the witness Harris that the firm of Roth & Englehardt, Hobart's assignee, had knowledge of the construction of the piano sold to Rae Walters prior to the date of conception by Hobart, and that the representatives of that company, on December 14, 1903, examined that instrument and later purchased it. This testimony might be of great weight had the construction of the Walters instrument been sufficiently established. It is evident, however, that the piano was still in the possession of Walters on March 25, 1904, when the letter above referred to was sent, and the record discloses that a machine embodying the issue was in the possession of the firm of Roth & Englehardt on March 12, 1904.

It is claimed that appellant's application was made from a full-sized operative machine, which was shipped to his attorneys on February 2, 1904. However, no evidence is offered to show that the attorneys ever received this instrument, or that the application drawings were so made.

Appellant is the junior applicant. The burden rests upon him to remove the presumption of prior invention that always attaches to the senior applicant. This presumption cannot be overcome by the uncorroborated evidence of the junior applicant alone. He must be corroborated directly on all points necessary to establish priority. In this, we think appellant has failed. In several essential particulars, as we have pointed out, the corroborating evidence fails to meet the requirements demanded of a contestant by the former holdings, both of the tribunals of the Patent Office, and of this court.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings, as by law required. *Affirmed.*